Raymond W. Watts and Elizabeth W. Watts v. Commissioner.
Watts v. Commissioner
Docket No. 68217.
United States Tax Court
T.C. Memo 1960-182; 1960 Tax Ct. Memo LEXIS 118; 19 T.C.M. (CCH) 968; T.C.M. (RIA) 60182; August 31, 1960
Raymond W. Watts, pro se, Kings Highway, Wesport, Conn. Charles T. Shea, Esq., for the respondent. *119 MULRONEY Memorandum Findings of Fact and Opinion MULRONEY, Judge: The respondent determined deficiencies in the income tax of petitioners for the years 1950 and 1951 in the respective amounts of $1,272.58 and $123.98. The questions in the case are: (1) Are petitioners entitled to a business loss deduction in the amount of $6,964 under section 23(e)(1) of the Internal Revenue Code of 1939 for the taxable year 1950 as the result of a sale of real estate located in Westport, Connecticut? (2) Are petitioners entitled to a capital loss deduction of $1,000 for the taxable year 1951 as the result of an alleged sale by petitioners of 1,500 shares of Wassell Organization, Inc. stock under sections 23(e)(2) and 117(d)(2) of the Internal Revenue Code of 1939? Findings of Fact Raymond W. and Elizabeth W. Watts are husband and wife. They live in Westport, Connecticut, and they filed their joint income tax returns for 1950 and 1951 with the then collector of internal revenue for the district of Connecticut at Hartford, Connecticut. They also filed an amended income tax return for 1951 with the district director of internal revenue at Hartford, Connecticut, on December 30, 1952. Raymond *120 W. Watts will hereafter be referred to as petitioner. Sometime in the winter of 1948-1949 petitioner purchased a barn and four acres of land located about five miles outside of Westport. He reconverted the barn building into a home and later in 1950 he sold his residence on Evergreen Avenue in Wesport where he and his wife and children then lived. He and his family lived with relatives for a few weeks and then when the remodeling of the barn had been completed he and his family moved into the reconverted barn home. Still later in 1950 petitioner sold the reconverted home for $37,000. In his income tax return for that year petitioner deducted $6,964 as a business loss resulting from said sale. Respondent's statutory notice disallowed the claimed loss but did allow a capital loss in the amount of $1,000 under section 117(d)(2), Internal Revenue Code of 1939. The said notice explains respondent allowed petitioner an adjusted basis in the property of $40,112.10, a sale price of $37,000 less commission on the sale of $1,850, which resulted in a recognized loss of $4,962.10. Petitioner had included certain items of taxes and interest which were excluded in respondent's computation of recognized *121 loss. The loss resulting from the sale of the reconverted barn in 1950 was not a loss incurred in a trade or business. Petitioner had for many years prior to the years here involved worked for the Wassell Organization, Inc. His father-in-law, F. L. Wassell, was president of the corporation and petitioner and his wife had about 50,000 shares of stock in Wassell Organization, Inc. In 1951 petitioner sold 1,500 shares of this stock to Roger Wing, an employee of said corporation. In his amended income tax return for that year he took a capital loss deduction of $1,000. The cost or other basis of the stock as claimed on the return was $3,000 and the sale price $400, resulting in a loss of $2,600 on the sale of the stock with $1,000 of said loss deductible in 1951. Respondent disallowed the claimed loss on the sale of the stock "as not an arm's length transaction". Opinion Petitioner tried his own case. He testified that early in 1949, while he was the sales manager for Wassell Organization, Inc. he became nervous and ill. He had been in the real estate business when he was 17 (sometime before the war) so when he became sick he decided to resign his employment with Wassell Organization, *122 Inc. and enter the real estate and building business. He testified his purchase of the barn and four acres was his first business transaction in this new business; that his intent was to reconvert the barn building into a home and sell it for a profit and put the profit into another construction project. He stated that because he lost so much money on this first venture, he was broke and out of business as a real estate operator and builder when he sold the home in 1950. In his income tax return for the year 1950, petitioner reported a salary of approximately $14,000 received from Wassell Organization, Inc. He explains this by saying it was a retainer or "just a handout". He also explained he moved the family into the reconverted barn home in 1949 because he couldn't sell it and it would "show * * * better furnished". He also said: "We had four children; it was five miles out of town; my wife was going frantic and one thing and another, and we kept bringing the price down and down in order to sell it. * * *" Petitioner admitted the remodeling of the barn and sale was the sole transaction of this nature that he engaged in. There is no evidence that he held himself out to others *123 as a realtor or builder. The evidence falls far short of establishing that petitioner's business in 1950 was that of realtor and builder. We hold for respondent on the issue. The second issue involves the capital loss deduction taken by petitioner in 1951 involving the sale by him of 1,500 shares of Wassell Organization, Inc. stock to Roger Wing. Respondent disallowed this claimed loss on the ground that it was "not an arm's length transaction". Respondent argues that his determination that the stock sale was not an arm's length transaction casts upon petitioner the burden of establishing the "bona fides of the transaction". This must mean respondent is denouncing the transaction as a pretended sale or a sham. Respondent relies entirely upon the presumed correctness of his determination and the general assertion that petitioner failed to prove the stock sale was bona fide. We are not given the slightest hint in respondent's brief as to his thinking about the reality of the purported sale transaction. We assume the burden of showing the bona fides of the stock sale transaction means the burden to show an actual sale and transfer, as opposed to a transaction which might appear *124 to be a sale but was actually something other than a sale, such as an option, loan or security transaction. The burden would include establishing the challenged transaction was not a sham; that it was not a transaction that merely purported to be a sale but by virtue of some collateral agreement or understanding it was calculated to produce a seeming income tax loss for the seller when no actual sale was made and no actual loss resulted. Petitioner's evidence clearly meets this test. Petitioner told a straightforward story of his sale of the stock to Roger Wing. He testified that he was broke; that he was overdrawn at the bank and had received a call from the bank about his overdraft; that he called Roger Wing into his office and begged him to buy the stock; that Roger said he didn't have the money; that he (petitioner) kept coming down in his price for the 1,500 shares (from his first asking of a dollar a share) and finally Roger gave him a check for $400 for the stock, and petitioner hurried to the bank with the check. There is no question but that the stock was transferred to Roger on the books of the corporation and a letter from Roger to the collector which respondent introduced *125 confirms the essential portions of petitioner's story. We feel petitioner sustained his burden of establishing the sale transaction was genuine and not a sham. The stock was unlisted. The letter mentioned above indicates that Roger had bought some stock from petitioner's wife for a dollar a share and petitioner stated he probably could have received a higher price for his stock but for the pressure of his immediate need for money. He testified: "I had to have the money * * * I had oodles of stock at that time; * * * it is not listed stock so to some degree it is available for whatever you can pan it off at or talk somebody into buying it for". Respondent argues his determination of disallowance should be sustained for failure of petitioner to establish his cost or other basis in the stock transferred. This is raised for the first time on brief. No issue as to basis was presented by the statutory notice or pleadings. The argument will not be considered. When respondent relies upon a certain ground for disallowance of a deduction he cannot, for the first time on brief, argue another ground and rest on the failure of petitioner to introduce evidence relating to that ground with the *126 resultant failure to overcome a presumption of correctness of his determination of deficiency. Sheldon Tauber, 24 T.C. 1769, Leon Papineau, 28 T.C. 54. There was another issue raised in the pleadings as to disallowed deductions for travel and entertainment expenses in both of the years before us. Petitioner did not concede the issue but he said he could not establish these deductions. There was no testimony as to these expenses and the issue is not argued on brief. Respondent's disallowance of these items is sustained. Decision will be entered under Rule 50.